Citation Nr: 1126159 
Decision Date: 07/12/11 Archive Date: 07/19/11

DOCKET NO. 06-06 732 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to service connection for a low back disorder.

2. Entitlement to service connection for legs/thigh disorder.

3. Entitlement to service connection for bronchitis.

4. Entitlement to service connection for sinusitis with blocked nasal passages.

5. Entitlement to an initial rating greater than 10 percent for left knee. 

6. Entitlement to an initial rating greater than 10 percent for gastro-esophageal reflux disease. 

7. Entitlement to an initial rating greater than 10 percent for orthostatic hypotension.

8. Entitlement to a compensable initial rating for left hip arthritis.

9. Entitlement to a compensable initial rating for residuals of scrotum and testicle trauma. 

10. Entitlement to a compensable initial rating for hidradenitis. 

11. Entitlement to a total disability rating based on individual unemployability.


REPRESENTATION

Appellant represented by: Non Commissioned Officers Association


WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

C. Fetty, Counsel


INTRODUCTION

The Veteran served on active duty from June 1982 to April 2004. He did not serve in the Persian Gulf Theater of Operations. 

This matter arises to the Board of Veteran's Appeals (Board) on appeal from a March 2005 decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan, that in pertinent part denied service connection for a knee disorder, GERD, a low back disorder, a hip disorder, testicular pain, an ankle disorder, a legs/thigh disorder, bronchitis, recurring hives with sweating, and for sinusitis with blocked nasal passages.

The Board remanded the case in January 2008 for additional development. In an October 2010-issued rating decision, VA's Appeals Management Center (hereinafter: AMC) granted service connection for a left knee disorder, for GERD, orthostatic hypotension, left hip arthritis, left ankle tendonitis, residuals of scrotum trauma, and for a skin disorder characterized as hidradenitis. Thus, the only service connection claims that remain on appeal are those listed on page 1. 

The Veteran has submitted a timely notice of disagreement (hereinafter: NOD) to the initial ratings assigned for the newly-service-connected disabilities. The NOD addresses the initial ratings assigned for the left knee, GERD, orthostatic hypotension; left hip arthritis, left ankle tendonitis, residuals of scrotum and testicle trauma, and for hidradenitis. No SOC has been issued addressing these issues. In accordance with 38 C.F.R. § 19.26, unless the matter has been resolved by a grant of benefits or the NOD is withdrawn by an appellant or his representative, the agency must prepare an SOC. Thus, a remand is necessary. These issues have been added to page 1 to reflect the Board's jurisdiction. 

During a December 2004 VA orthopedic compensation examination, the Veteran asserted that he was unemployed because of multiple medical problems. Because he seeks higher initial ratings for several service-connected disabilities and because the Court, in Rice v. Shinseki, 22 Vet. App. 447 (2009), held that a total disability rating based on individual unemployability (hereinafter: TDIU) claim is part of an increased rating claim, when entitlement to TDIU is raised by the record, the issue of TDIU is properly before the Board. Entitlement to TDIU has been added to page 1 to reflect the Board's jurisdiction. Further development is needed to properly adjudicate the TDIU claim.

In April 2011, the Veteran submitted new evidence directly to the Board along with a waiver of his right to initial RO review of that evidence. Therefore, no remand for initial RO consideration of this evidence is necessary.

Service connection for a leg/thigh disorder, higher initial ratings for the left knee, GERD, orthostatic hypotension; left hip arthritis, left ankle tendonitis, residuals of scrotum and testicle trauma, and for hidradenitis, and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. Diagnoses of lumbar spine degenerative disc disease and L5-S1 radiculopathy have been offered.

2. The medical evidence tending to link the current lumbar spine disorder to active military service is in relative equipoise. 

3. The medical evidence reflects that asthma, rather than bronchitis, began during active service.

4. The medical evidence reflects that vasomotor rhinitis with turbinate hypertrophy, rather than sinusitis with blocked nasal passages, began during active service.


CONCLUSIONS OF LAW

1. Lumbar spine degenerative disc disease and radiculopathy were incurred in active service. 38 U.S.C.A. §§ 1110, 1131, 1137, 5103A, 5107 (West 2002); 38 U.S.C.A. § 5103 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.303 (2010).

2. Asthma was incurred in active service. 38 U.S.C.A. §§ 1110, 1131, 1137, 5103A, 5107 (West 2002); 38 U.S.C.A. § 5103 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.303 (2010).

3. Vasomotor rhinitis with turbinate hypertrophy was incurred in active service. 38 U.S.C.A. §§ 1110, 1131, 1137, 5103A, 5107 (West 2002); 38 U.S.C.A. § 5103 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.303 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

As set forth at 38 U.S.C.A. §§ 5100, 5103A, 5107, 5126 (West 2002); 38 U.S.C.A. §§ 5102, 5103 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2010), VA must notify claimants of certain procedural aspects of their claims and must assist claimants in obtaining evidence that might substantiate their claims. Because the Board is granting the benefits sought by the claimant, any error (if committed) with respect to VA's duty to notify or assist or failure to insure compliance with remand instructions does not result in unfair prejudice to the claimant and need not be discussed. 

Service Connection

Service connection will be awarded for disability resulting from injury or disease incurred in or aggravated by active service (wartime or peacetime). 38 U.S.C.A. §§ 1110; 1131 (West 2002), 38 C.F.R. § 3.303(a) (2010). 

Service connection requires competent evidence showing: (1) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; (2) medical evidence of current disability; and (3) medical evidence of a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

In Caluza, the Court also stressed that § 3.102 states, "The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident arose under combat, or similarly stressful conditions [emphasis added], and is consistent with the probable results of such known hardships." Caluza, 7 Vet. App. at 509. 

Each disabling condition shown by service medical records, or for which the Veteran seeks service connection, must be considered on the basis of the places, types, and circumstances of his service as shown by service records, the official history of each organization in which he served, his medical records, and all pertinent medical and lay evidence. 38 C.F.R. § 3.303(a).

"Direct" service connection may be granted for any disease not diagnosed initially until after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred during service. 38 C.F.R. § 3.303(d); Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). 

Chronic diseases listed at 38 C.F.R. §§ 3.307, 3.309 are accorded special consideration for service connection. Where a Veteran served at least 90 days during a period of war or after December 31, 1946, and a listed chronic disease, such as arthritis, becomes manifest to a degree of 10 percent within one year from the date of termination of such service, such disease will be presumed to have been incurred in service, even though there is no evidence of such disease during service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2002); 38 C.F.R. §§ 3.307, 3.309 (2010).

Once the evidence has been assembled, the Board assesses the credibility and weight to be given to the evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) and cases cited therein. When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102 (2010). 

In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the Court stated that a Veteran need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

According to 38 U.S.C.A. § 1154(a), the Secretary must consider the places, types, and circumstances of the Veteran's service, his unit's history, his service medical records, and all pertinent lay and medical evidence in the case. More favorable consideration is afforded combat Veterans under 38 U.S.C.A. § 1154(b), but, because the Veteran was not in combat, he will not be afforded this consideration. 

Low Back Disorder

The Veteran's service treatment reports (STRs) do not contain an entrance examination report, nor is there a separation examination report and/or medical history questionnaire on which the Veteran might have reported continuing symptoms at retirement from active service. 

The STRs document that low back pain treatment began in April 1990. An April 1990 report notes a complaint of intermittent low back pains since boot camp. The April 1990 assessment was lumbar strain. Lumbar strain was assessed again in November 1990. A July 1991 STR notes low back pain with no recent trauma. The assessment was muscle spasms. Another July 1991 report notes that X-rays were normal, but the assessment was low back pain with radiculopathy. A March 1994 lumbar spine X-ray was within normal limits. The assessment was joint pains.

The STRs include an emergency room report of low back pain in December 1997 with a history of low back pain complaints in the recent year. A February 2003 report notes persistent low back pain. The assessment was mild mechanical low back pain. An April 2003 report notes low back pains radiating down to the thighs. Although there is no separation examination report, soon after retiring with over 21 years of active service, in June 2004 the Veteran submitted a claim for service connection for chronic low back pain.

According to a December 2004 VA orthopedic compensation examination report, the Veteran reported an in-service back injury with onset of low back pain in 2001. He reported two episodes of incapacitating pain in the recent 12 months. He asserted unemployability due to his service-related disabilities and that these disabilities cause problems with activities of daily living. The diagnosis was subjective complaints of polyarthralgia. No objective pathological findings. No X-ray of the spine was taken, however. 

The Veteran later submitted an October 2005 private electromyography study that confirms left L5-S1 radiculopathy.

In June 2007, the Veteran testified before the undersigned Veterans Law Judge that low back pain continued that he has been seen for low back pain since active service. In January 2008, the Board remanded the claim for an examination.

Private medical reports received since the January 2008 Board remand note complaints of low back pain at various times. An October 2006 report notes back pains, from the neck down.

In March 2008, the RO received a letter from the Veteran in which he reported that he injured his back in 1990 during hand-to-hand combat training. He reported continual back pain since active service. 

In April 2008, a service comrade who reportedly attended boot camp with the Veteran recalled that the Veteran had back complaints while in boot camp. 

An April 2009 VA spine compensation examination report notes (erroneously) that there is no history of pain or spasm. The report also notes (erroneously) that there is no history of incapacitating episodes of spine disease. The report notes normal posture and lordosis, although subsequently, the report notes loss of lordosis. The examiner reported that the ranges of motion are normal. X-rays showed mild loss of disc space at L1-2 and mild loss of lordotic curve. The diagnosis was degenerative disc disease. The examiner stated that the condition stems not from one inciting event, but rather, from an overuse condition, i.e., heavy packs, excessive running on uneven ground, genetics, etc.

The examiner also found back pains shooting into the left leg. Leg muscle tone was normal, bilaterally. The examiner mentioned that neuropathy developed during active military service and stated, "...and it may have to do with exposure vs. other. He states he has been evaluated for other conditions that can cause neuropathy (i.e. Diabetes). No other condition can account for his neuropathy." 

In an October 2009 VA addendum opinion, the April 2009 VA examiner opined that the back condition is less likely as not caused by an overuse condition, but nevertheless may have been aggravated by military service. 

The above-discussed medical evidence conflicts as to whether a back disability exists. On one hand, the December 2004 VA examiner found only subjective polyarthralgia; however, after an October 2005 EMG report confirmed L5-S1 radiculopathy and VA X-rays showed mild loss of disc space, the April 2009 VA examiner offered a diagnosis of degenerative disc disease. Because the April 2009 VA diagnosis is based on the EMG and X-rays, more weight will be placed on that diagnosis. The Board therefore concludes that degenerative disc disease of the lumbar spine with radiculopathy is the correct diagnosis. 

The evidence also conflicts as to service origin of degenerative disc disease of the lumbar spine. The favorable evidence includes the STRs that show a chronic low back condition, the April 2009 medical nexus opinion tending to relate the current low back disability to the rigors of active service, and the Veteran's lay evidence of continuous symptoms since active service. The unfavorable evidence includes only the October 2009 medical opinion that tends to dissociate the current disability from active service. The Board must therefore weigh the conflicting evidence. 

The April 2009 favorable opinion is weakened because it recites incorrect facts. Whereas the examiner found no history of incapacitating episodes, the December 2004 report clearly notes such episodes. Also, the April 2009 report notes that there is no history of pain or spasm, whereas the claims files contain ample evidence of a long history of low back pain beginning during active service. These factual errors lessen the probative value of the favorable medical opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (a medical opinion that contains only data and conclusions is accorded no weight); also see Reonal v. Brown, 5 Vet.App. 458, 461 (1993) (medical opinion based upon an inaccurate factual premise has no probative value). Had the physician correctly noted the onset of spasm and pain beginning during active service, this would have bolstered the otherwise favorable nexus opinion. 

Turning to the October 2009 addendum report, in that report, the examiner contradicts her/his April 2009 opinion by stating that overuse is not likely to have caused degenerative disc disease, but that active service may have aggravated any such condition. The rationale appears to be that the Veteran has no significant disability. The Board will not attach any probative value to that opinion because it conflicts with the EMG and X-ray evidence that there is a current disability and because the supporting rationale is weak and unclear. Moreover, even if the direct service connection claim were to be fully rebutted by this opinion, the examiner has also offered a favorable nexus opinion concerning aggravation. 

The Board must address the competency, credibility, and probative value of all evidence, including lay evidence. 38 U.S.C.A. § 7104(d) (1) (West 2002); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). The lay evidence is competent with respect to observance of symptoms readily observable and it is credible, as there is no indication of lack of veracity. Washington v. Nicholson, 19 Vet. App. 362, 367-68 (2005). The determination of an issue involving a question of medical expertise requires further analysis of the Veteran's competency. 38 C.F.R. § 3.159. Jandreau v. Nicholson, 492 F.3d1372, 1377 (Fed. Cir. 2007) (lay diagnosis is competent if: (1) lay person is competent to identify the medical condition; (2) lay person is reporting a contemporaneous medical diagnosis; or (3) lay testimony of symptoms at the time supports a later diagnosis by a medical professional); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (2006) (The Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence). In this case, the Veteran's testimony concerning service origin of his low back pain supports the April 2009 medical opinion and therefore must be afforded weight. 

In this case there is reasonable doubt concerning service connection, due chiefly to inconsistency between the April 2009 favorable opinion and the conflicting October 2009 addendum. Where reasonable doubt exists, the benefit of the doubt doctrine, set forth at 38 U.S.C. 5701, must be applied. After considering all the evidence of record, including the testimony, the Board finds that the evidence is at least in relative equipoise. The benefit of the doubt doctrine will therefore be applied. 38 U.S.C.A. § 5107 (West 2002); Gilbert, supra. Service connection for lumbar degenerative disc disease with radiculopathy will therefore be granted.

Service Connection for Bronchitis

The STRs lack an entrance examination report, a separation examination report, and a report of medical history questionnaire on which the Veteran might have reported continuing respiratory or nasal symptoms at retirement from active service. The STRs reflect treatment for colds at various times. An August 1982 report notes resolving viral bronchitis. A November 1982 report contains an assessment of viral bronchitis. A March 1983 report notes an upper respiratory infection. An August 1986 report contains an assessment of bronchitis. Another August 1986 report notes an emergency room admission for bronchitis, and for a rule-out pneumonia scenario. 

Bronchitis was assessed in December 1991. In November 1993, viral syndrome and non-cardiac chest pain were assessed. A December 1995 STR notes viral upper respiratory infection. A July 1996 report notes a resolving viral syndrome. Although there is no separation examination report, soon after retirement, in June 2004 the Veteran submitted a claim for service connection for recurring bronchitis. 

According to a December 2004 VA general medical examination report, the lungs were clear. Chest X-rays showed poor inspiration and no active lung infiltrate. No relevant diagnosis was offered, however.

In March 2005, the RO denied service connection for bronchitis on the basis of no diagnosed disability. The rating decision informs the Veteran that he failed to inform the examiner of persistent symptoms and breathing difficulties.

In June 2007, the Veteran testified before the undersigned Veterans Law Judge that he was treated seasonally for bronchitis. In January 2008, the Board remanded the claim for an examination to determine the nature and etiology of bronchitis.

An undated (probably March 2009) VA respiratory system compensation examination report mentions recurring bronchitis during active service and a history of asthma. A pulmonary function test was performed. The diagnosis was mild asthma, an obstructive airway disease. The examiner then noted that bronchitis is associated with asthma. The physician opined that it is at least as likely as not that asthma was incurred in active military service. 

In an August 2010 supplemental statement of the case, VA's AMC continued to deny the claim, based on no evidence of bronchitis. 

Although the Veteran applied for service connection for bronchitis based on diagnoses and assessments of bronchitis that were clearly offered during active service, the recent VA examiner stated that the current diagnosis pursuant to the bronchitis claim is asthma, an obstructive airway disease. Regardless of the changed diagnosis, the Court has held that the Veteran seeks service connection for the symptoms claimed. Clemons v. Shinseki, 23 Vet. App. 1 (2009) (holding that a claimant seeks service connection for the symptoms regardless of how those symptoms are diagnosed or labeled). 

The recent VA examiner gave a cogent, well-supported, favorable nexus opinion relating asthma to active service and to the bronchitis claim. No examiner has controverted this medical opinion. After considering all the evidence of record, including the testimony, the Board finds that the evidence favors the claim. Service connection for asthma (rather than bronchitis) will therefore be granted. 

Service Connection for Sinusitis with Blocked Nasal Passages

Reviewing the STRs, they reflect treatment for colds at various times. A November 1982 report mentions sinus congestion and viral syndrome. A March 1983 report notes an upper respiratory infection. An August 1984 report notes treatment for sinus congestion. A May 1987 report notes sinusitis, which had been present since April 1987. A February 1990 STR notes possible right-sided maxillary sinusitis, but an accompanying consultation report contains an assessment of viral pharyngitis. In November 1993, viral syndrome and non-cardiac chest pain were assessed. A December 1995 STR notes viral upper respiratory infection. A July 1996 report notes a resolving viral syndrome. A September 2000 report notes right maxillary sinus pains and an assessment of viral syndrome and questionable sinusitis. A January 2003 report notes a week of persistent congestion and sinusitis symptoms. The assessment was early sinusitis. Another STR, date not legible, contains an assessment of probable bacterial sinusitis.

Although there is no separation examination report, soon after retiring with over 21 years of active service, in June 2004 the Veteran submitted a claim for service connection for chronic sinusitis and chronic blocked nasal passages. 

In March 2005, the RO denied service connection for sinusitis on the basis of no diagnosed disability. The rating decision informs the Veteran that he failed to inform the examiner of persistent symptoms.

In June 2007, the Veteran testified before the undersigned Veterans Law Judge that he was treated seasonally for sinusitis. In January 2008, the Board remanded the claim for an examination to determine the nature and etiology of sinusitis.

Private medical reports received since the January 2008 Board remand include an April 2008 report that contains an assessment of probable viral sinusitis. 

A March 2009 VA nose, sinus, larynx, and pharynx compensation examination report reflects a long history of nasal congestion. The examiner stated (erroneously) that there is no history of sinusitis. The left nasal passage was 60 percent obstructed and the right nasal passage was 90 percent obstructed. The diagnoses were chronic vasomotor rhinitis; bilateral turbinate hypertrophy; and, no evidence of sinus disorder. Then the examiner stated, "Problem associated with the diagnosis: sinusitis." Thus, it appears that the physician has attributed the claimed sinusitis symptoms to vasomotor rhinitis. The physician then opined that it is at least as likely as not that vasomotor rhinitis with turbinate hypertrophy was incurred in active military service. 

In an August 2010 supplemental statement of the case, VA's AMC continued to deny the claim based on no evidence of sinusitis. 

Although the Veteran applied for service connection for sinusitis based on diagnoses offered during active service, the recent VA examiner stated that the current diagnosis associated with the sinusitis claim is vasomotor rhinitis with turbinate hypertrophy. Regardless of the changed diagnosis, the Court has held that the Veteran seeks service connection for the symptoms claimed. Clemons, supra 

The recent VA examiner gave a cogent, well-supported, favorable nexus opinion relating vasomotor rhinitis with turbinate hypertrophy to active service. No examiner has controverted this medical opinion. After considering all the evidence of record, including the testimony, the Board finds that the evidence favors the claim. Service connection for vasomotor rhinitis with turbinate hypertrophy (rather than sinusitis with blocked nasal passages) will therefore be granted. 


ORDER

Service connection for lumbar degenerative disc disease with radiculopathy is granted.

Service connection for asthma is granted. 

Service connection for vasomotor rhinitis with turbinate hypertrophy is granted.


REMAND

Service Connection for Legs/Thigh Disorder

The Court held that when the remand orders of the Board are not complied with, the Board itself errs in failing to ensure compliance. See Stegall v. West, 11 Vet. App. 268, 271 (1998). In January 2008, the Board remanded the claim for an examination to determine the nature and etiology of a claimed disability of the "legs/thighs." The March and April 2009 examination reports and the October 2009 addendum report are silent for the claimed bilateral leg/thigh disorder and are therefore inadequate for evaluation purposes. 

If a VA compensation examination report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes. 38 C.F.R. §§ 4.2, 19.9(a) (2010); Bierman v. Brown, 6 Vet. App. 125, 129 (1994). A brief history of the legs/thighs claim is set forth below.

The STRs reflect complaints of leg pains at various times. An October 1, 1982-dated report notes an assessment of muscle spasms after the Veteran complained of bilateral leg pains. An October 1982 report notes bilateral leg cramps with pain in the calves and quadriceps. The assessment was muscle tension of questionable etiology. Two days later, on October 6, 1982, the Veteran sought emergency room treatment for bilateral leg weakness and pains. He was carried in by two friends. The diagnosis was diffuse myalgias, unknown etiology. 

An October 1996 report notes left lower leg pains. The assessment was left calf strain. A December 1997 report notes right hip pains radiating to the groin and down the right leg. A June 1999 report notes a right hip strain. A July 1999 report notes questionable ileotybial band syndrome (inflammation over the bone). The right hip received a steroid injection. 

An August 2000 report mentions pain in the right femoral area. Possible right hip osteophytes, arthritis, and bursitis were noted. Also noted again was questionable iliotibial band syndrome. In October 1990, bilateral patellofemoral pain syndrome was assessed. In March 1993, right hip and right knee tendonitis were assessed. 

Although there is no separation examination report, soon after retiring with over 21 years of active service, in June 2004 the Veteran submitted a claim for service connection for chronic leg or thigh pains, which he reported began in October 1982.

During a December 2004 VA general medical examination, the Veteran reported bilateral leg pain that included the hips, knees, ankles, and feet. There was no intermittent claudication-type leg pain. Homan's sign was negative (positive finding indicates thrombophlebitis). Gait and posture were normal. No relevant diagnosis was offered.

The legs appeared entirely normal to the examiner. The diagnosis was subjective complaints of polyarthralgia and no objective pathological findings. 

The RO denied service connection for the legs and thighs in March 2005 on the basis of no diagnosed disability. 

In June 2007, the Veteran testified before the undersigned Veterans Law Judge that he had daily leg pains and that his legs hurt every time he stood up. In January 2008, the Board remanded the claim for an examination.

Private medical reports received since the January 2008 Board remand include an October 2006 report that notes thigh pains or pulling sensations.

In April 2008, a service comrade who reportedly attended boot camp with the Veteran recalled that the Veteran had leg locking while in boot camp and that he had to carry the Veteran around. 

A March 2009 VA orthopedic compensation examination report reflects multiple joint problems, but no specific thigh problem. An April 2009 VA spine compensation examination report notes back pains shooting to the left leg, but is otherwise silent for any leg or thigh complaint. An October 2009 VA addendum opinion, written by the April 2009 VA examiner, does not address any leg/thigh problem. 

Because the Board previously requested an examination to determine the nature and etiology of any leg/thigh-related symptom, and because VA's duty to assist requires VA to obtain such information, the Veteran's legs and thighs should be examined.

Initial Ratings for the Left Knee, GERD, Orthostatic Hypotension; Left Hip Arthritis, Left Ankle Tendonitis, Residuals of Scrotum and Testicle Trauma, and Hidradenitis

As noted in the introduction, in an October 2010-issued rating decision, VA's AMC granted service connection for the left knee, GERD, orthostatic hypotension; left hip arthritis, left ankle tendonitis, residuals of scrotum and testicle trauma, and for hidradenitis. In February 2011, the Veteran, through his representative, submitted an NOD to the initial ratings assigned. No SOC has been issued addressing these issues. In accordance with 38 C.F.R. § 19.26, unless the matter has been resolved by a grant of benefits, or the NOD is withdrawn by an appellant or his representative, the RO must prepare an SOC. Thus, a remand is necessary. Manlincon, supra. However, these issues will be returned to the Board after issuance of the SOC only if perfected by the filing of a timely substantive appeal. Smallwood v. Brown, 10 Vet. App. 93, 97 (1997).

TDIU

Where the record raises the question of whether the Veteran is unemployable due to the disability for which an increased rating is sought, then part and parcel to that increased rating claim is whether TDIU is warranted. Rice, supra. This holding is applicable because, according to a December 2004 VA compensation examination report, the Veteran attributed unemployment to service-connected disabilities. 

A TDIU claim "presupposes that the rating for the [service-connected] condition is less than 100%, and only asks for TDIU because of 'subjective' factors that the 'objective' rating does not consider." Vettese v. Brown, 7 Vet. App. 31, 34-35 (1994). Assignment of a TDIU evaluation requires that the record reflect some factor that "takes the claimant's case outside the norm" of any other veteran rated at the same level. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993) (citing 38 C.F.R. §§ 4.1, 4.15). The question is whether the Veteran is capable of performing the physical and mental tasks required of employment, not whether the Veteran can find employment. Id.

In VAOPGCPREC 6-96, VA's General Counsel (GC) stressed that where the Veteran has alleged or asserted that the schedular rating is inadequate or where the evidence shows exceptional or unusual circumstances, the Board must specifically adjudicate the issue of whether an extraschedular rating is appropriate. If there is enough such evidence, the Board must direct that the matter be referred to the VA Central Office for consideration. In VAOPGCPREC 6-96, GC stressed that if further action is necessary, the Board should remand the TDIU issue. 

The Court specifically held that the Board is precluded from assigning an extraschedular rating "in the first instance." Floyd v. Brown, 9 Vet. App. 88, 94 (1996). Where the evidence tends to raise the claim, the Board must remand the matter for initial consideration by the proper authority-proper authority being VA's Central Office. 

Accordingly, the case is REMANDED for the following action:

1. The AMC should make arrangements for an examination of both legs/thighs by an appropriate specialist. The claims file should be made available to the physician for review. The physician is asked to review the claims file, note that review in the report, elicit a history of relevant symptoms from the Veteran, examine the lower extremities, and offer a diagnosis, if forthcoming. The physician should offer a rationale for any conclusion in a legible report. If any question cannot be answered, the physician should state the reason. 

2. The AMC should issue an SOC addressing the initial ratings assigned for the left knee, GERD, orthostatic hypotension; left hip arthritis, left ankle tendonitis, residuals of scrotum and testicle trauma, and for hidradenitis. These issues will be returned to the Board after issuance of the SOC only if perfected by the filing of a timely substantive appeal.

3. The AMC should develop the TDIU claim as necessary. Following development and re-adjudication of the TDIU claim, if the benefit is not granted, the AMC should submit it to the Director, Compensation and Pension Service, for extraschedular consideration in accordance with 38 C.F.R. § 4.16(b) and § 3.321 (b). Following that action, if TDIU is not granted, an appropriate supplemental statement of the case (SSOC) should be issued. The Veteran and his representative should be afforded an opportunity to respond to the SSOC before the claims folder is returned to the Board. 

Thereafter, the case should be returned to the Board, if in order. The Board intimates no opinion as to the ultimate outcome of this case. No action by the Veteran is required until he receives further notice; however, the Veteran is advised that failure to report for examination, without good cause, may have adverse consequences on his claims. 38 C.F.R. § 3.655 (2010). The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



______________________________________________
F. JUDGE FLOWERS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs