Carl SMALLWOOD, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–609.

United States Court of Veterans Appeals.

Feb. 3, 1997.

Order Clarifying Decision
March 11, 1997.

Carl Smallwood, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and Carolyn F. Washington, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and MANKIN * and IVERS, Judges.

NEBEKER, Chief Judge:

The appellant, Carl Smallwood, appeals two March 28, 1994, decisions of the Board of Veterans' Appeals (BVA or Board). The first decision denied (1) service connection for residuals of injuries to Muscle Groups I through IV, (2) increased ratings for residuals of gunshot wounds of the right foot and right side of the chest, and (3) a total rating based on individual unemployability (TDIU). The Board styled this decision as a "reconsideration" of two earlier Board decisions. The second decision denied (1) service connection for arthritis of the cervical spine, (2) an increased rating for osteomyelitis, and (3) an increased rating for a right sternoclavicular joint separation. For the reasons set forth below, the Court will dismiss the appeal for lack of jurisdiction with respect to the claim for residuals of injuries to the muscle groups and the claim for arthritis of the cervical spine. With regard to the remaining claims, the Court will vacate both Board decisions and will remand these matters for further proceedings.

* Judge Mankin was assigned to and participated in this case, but died before its final disposition.

## I. FACTUAL BACKGROUND

The appellant served in the United States Army from June 1936 to April 1939, and from November 1939 until July 1952. Record (R.) at 32. His service included combat duty in both World War II and the Korean Conflict. *Ibid.* In November 1944, he was wounded by an artillery shell fragment, and received an injury to the tip of his nose, left side of his chin and left index finger. R. 179–84. In March 1945, he was shot in the right side of the chest, suffering a severe penetrating wound and multiple lacerations of the right lung. R. 188, 192. In September 1950, during his service in Korea, the appellant sustained a gunshot wound to his right foot. The shot went in at the arch of the foot and exited though the heel. After a series of examinations, x-rays, and operations, the appellant was medically retired from the Army in July 1952. R. at 476. In January 1953, a VA regional office (RO) awarded him service connection for residuals of the gunshot wounds to his chest and right foot. R. at 508–09. He received a combined 40% rating for his disabilities. *Ibid.* In July 1954, he was awarded service connection for osteomyelitis of the right calcaneus at the 10% level. R. at 534–35. The calcaneus is a tarsal bone of the foot and is commonly known as the heel bone. *See* WEBSTER'S MEDICAL DESK DICTIONARY 93 (1986).

In February 1982, the RO awarded the appellant a 60% rating for his various service-connected disabilities. R. at 564. He disagreed with the rating and filed a claim for a 100% rating based on TDIU. R. at 575. In support of this claim, he submitted a statement from Dr. Carl Pigman, which provided the following diagnoses: (1) osteomyelitis of the right calcaneus; (2) right lung pathology; (3) right-side chest pathology; (4) osteoarthritis of the dorsal and lumbar spine and both shoulders; and (5) gastritis. R. at 568. Dr. Pigman further stated that the appellant was "totally disabled for any type of employment." *Ibid.*

In January 1984, the BVA granted service connection for residuals of a right shoulder separation, denied the TDIU claim, denied increased ratings for residuals of gunshot wounds to the right side of the chest and right foot, and denied an increased rating for osteomyelitis of the right calcaneus. R. at 651. In April 1984, pursuant to the BVA's grant of service connection for separation of the right sternoclavicular joint, the RO assigned a 20% disability rating. R. at 655. This rating brought his total combined disability rating to 70% disabling. *Ibid.* In November 1987, the Board denied claims for service connection for a back disability and injury to Muscle Groups I through IV, denied a TDIU claim, and denied increased ratings for the appellant's remaining service-connected disabilities. R. at 750–56, Supplemental (Suppl.) R. at 1–12.

In March 1988, the appellant filed another claim for an increased rating for his service-connected right shoulder and right foot disabilities. R. at 761. He also filed a new claim for service connection for a cervical spine disability. *Ibid.* In April 1988, the RO issued a deferred rating decision and requested that the appellant "submit medical evidence in support of [his] claim, including continuous treatment records for his claimed cervical spine condition." R. at 763. In a letter dated May 4, 1988, the RO informed the appellant that he could submit additional medical evidence, "which would support [his] claim[,] including medical evidence showing continued treatment for [his] disability to [his] cervical spine from the time of [his] discharge from the military to the present." Second Suppl. R. at 1. In October 1988, the RO mailed the appellant the following letter:

This letter concerns your recent claim for [VA] benefits. Before final action could be taken on your claim, we needed medical evidence to include medical evidence to show continued treatment for your cervical spine from the time of your discharge to the present. This evidence was requested in our letter to you dated May 4, 1988. Our records do not show that we have received this evidence, therefore, we have disallowed your claim.

This disallowance does not mean that you cannot submit the requested evidence. You can do so at any time. However, if the evidence is not received before May 4, 1989, one year from the date of our first letter, benefits, if otherwise in order, can-

not be paid prior to the date of receipt of this evidence.

If you disagree with this decision, please refer to the attached notification of your appeal rights.

R. at 790. On November 9, 1988, the appellant submitted a statement in support of his claim. He stated, in part: "This now is my Notice of Disagreement (NOD) to your October 20, 1988 disallowance of benefits." He also enclosed medical records relating to his cervical spine disability. R. 792–93. In December 1988, the RO received an NOD with respect to the denial of his claim for increased disability ratings. R. at 817.

In February 1989, the appellant submitted a VA form 21–8940, Veteran's Application for Increased Compensation Based on Unemployability. R. at 830–32. The RO confirmed a prior rating decision which denied the appellant's claim for TDIU. R. at 838. In April 1990, the BVA remanded to the RO for readjudication in light of new evidence submitted after the issuance of the most recent Statement of the Case. R. 883–84. In June 1990, the Regional Office (RO) granted the appellant "[a]n increased evaluation ... for [his] osteomyelitis of the right foot at the 30% evaluation level." R. at 907. However, the RO denied service connection "for degenerative joint disease of the neck," and an "[i]ncreased evaluation of the service connected right shoulder disability and gun shot wound to the right foot remained denied." *Ibid.* In October 1990 the appellant perfected his appeal by filing a VA Form 9, Appeal to the Board of Veterans' Appeals (Form 9), and he requested that his claim be amended to include a TDIU claim. R. at 931–32. In November 1990, the RO issued a rating decision denying the appellant's TDIU claim. R. at 940–42. In December 1990, the appellant filed another Form 9, for his TDIU claim. R. at 944.

In October 1991, the RO denied an increased rating for the appellant's previously established service-connected disabilities, denied service connection for the cervical spine disability, and denied entitlement to TDIU. R. at 1003. In March 1992, the appellant notified the RO, through his service representative, that he disagreed with the denials

for increased disability ratings, and the denial of entitlement to TDIU. R. at 1013–14. In August 1992, the BVA received a motion from the appellant requesting reconsideration of two prior BVA decisions. R. at 1052–53. The appellant requested that the January 1984 and November 1987 BVA decisions be reconsidered. *Ibid.* The appellant also contended that the January 23, 1953, RO rating decision was a product of clear and unmistakable error (CUE). R. at 1053.

In two separate decisions, both dated March 28, 1994, the BVA essentially denied all of the appellant's claims. In the first decision, the BVA granted "reconsideration" of the 1984 and 1987 BVA decisions and denied all claims. R. at 7–29. In the second decision, the BVA denied service connection for arthritis of the cervical spine, and denied increased ratings for osteomyelitis of the right calcaneus, which is currently rated as 30% disabling, and residuals of a right sternoclavicular joint separation, which is currently rated as 20% disabling. R. at 30–46.

## II. ANALYSIS

### A. Jurisdiction–Conferring NOD

■ It is axiomatic that as a prerequisite "for the Court to have jurisdiction over a case, the appellant must have filed a valid NOD as to that case on or after November 18, 1988." *West v. Brown,* 7 Vet.App. 329, 331 (1995) (en banc); Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note). In *Hamilton v. Brown,* the Court established that "[t]here can be only one valid NOD as to a particular claim ... until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." 4 Vet. App. 528, 538 (1993) (en banc), *aff'd,* 39 F.3d 1574 (Fed.Cir.1994).

■ The appellant filed an NOD to the denial of service connection for his cervical spine disability on November 9, 1988. R. at 792. The Court holds that this statement was the appellant's NOD because it initiated the appellate process with respect to this claim by expressing disagreement with the October 1988 RO decision. *See* 38 C.F.R.

§ 20.201 (1995); *see also Crippen v. Brown,* 9 Vet.App. 412, 424 (1996); *Hamilton,* 4 Vet. App. at 531. Therefore, because the NOD predates November 18, 1988, the Court lacks jurisdiction to review the Board's decision with respect to the cervical spine claim.

█ The Secretary argues, in the first instance, that the Court lacks jurisdiction over the first March 28, 1994, Board decision because it was styled as a "reconsideration" decision. The Secretary is correct only with respect to the Board's treatment of the claim for residuals of injuries to Muscle Groups I through IV, as the NOD to that claim was filed before November 18, 1988. The Board's decision on that claim was indeed a reconsideration and was not the final decision issued as the result of a new appeal. However, the remaining claims that were adjudicated in the Board's "reconsideration" decision (increased rating claims for residuals of the service-connected gunshot wounds, right sternoclavicular joint separation, osteomyelitis of the right calcaneus and the TDIU claim) all have jurisdiction-conferring NODs. *See Smith v. Brown,* 8 Vet.App. 546 (1996) (en banc). Appeals with respect to these claims were perfected, and the Board was required to issue a decision that addressed these claims. *See* 38 U.S.C. § 7105; *see also* 38 C.F.R. § 20.202 (1994) ("[p]roper completion and filing of a Substantive Appeal are the last actions the appellant needs to take to perfect an appeal"). As the Board failed to issue any other decision purporting to adjudicate the appeals to these claims, the Court shall construe the "reconsideration" decision as the decision that the Board was required to issue on those appeals. While the Board is free to treat its decision as a "reconsideration" pursuant to 38 U.S.C. § 7103, this action will not defeat the Court's jurisdiction over the appeal. *See Smith,* 8 Vet.App. at 551–52. Surely, if the Board cannot bypass an effort to reopen as in *Smith,* it cannot avoid review of a claim which has a valid NOD by incorporating it into a ruling on reconsideration.

### B. Increased Ratings for Osteomyelitis and the Sternoclavicular Separation

█ The determination of whether a claimant is entitled to an increase in a sche-

dular disability rating is a question of fact subject to the "clearly erroneous" standard of review in 38 U.S.C. § 7261(a)(4). *See Solomon v. Brown,* 6 Vet.App. 396, 402 (1994); *Lovelace v. Derwinski,* 1 Vet.App. 73, 74 (1990). Under this standard, the Court can overturn the BVA decision only when there is no "plausible basis in the record" for the decision. *Gilbert v. Derwinski,* 1 Vet. App. 49, 53 (1990).

█ The appellant's gunshot wound to his right foot and osteomyelitis disabilities are essentially treated under the amputation rule. *See* 38 C.F.R. §§ 4.43 and 4.68 (1995). According to the BVA, this means that "the combined rating for the right below-the-knee disability cannot exceed 40 percent, the current level." R. at 44. The appellant argues that the amputation rule should not apply because he has osteomyelitis symptoms that have spread to involve other bodily functions which are not below the right knee. Pursuant to 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5000 (1993), both 60% and 100% disability ratings require "constitutional symptoms." Here, the record is devoid of any medical support for the appellant's contention that he has constitutional symptoms. Therefore, there is a plausible basis in the record for the BVA's conclusion that the appellant is not entitled to an increased schedular rating for his service-connected osteomyelitis. *See Espiritu v. Derwinski,* 2 Vet. App. 492 (1992).

█ Nevertheless, the Court holds that the BVA erred by not considering referral of this claim to the appropriate VA official for consideration of an extra-schedular rating under 38 C.F.R. § 3.321(b) (1995). *See Bagwell v. Brown,* 9 Vet.App. 337 (1996). The appellant's foot disability is excreting a particularly foul-smelling drainage that seems to suggest that he may qualify as an exceptional case under section 3.321. In fact, the Board specifically made a finding of fact that, because the "[o]dor from the discharge ... [of the appellant's] foot, permeated [an] examining room," one medical examiner stated that "[t]his, of itself, would seem to preclude employment in a confined space with other workers." R. at 562. However, the Board

failed to address this fact in its subsequent analysis and decision. As the issue of whether an extra-schedular rating is warranted based solely on the odor emanating from the appellant's foot is reasonably raised by the Board's own factual findings, its failure to address the referral issue in its decision constitutes error. *EF v. Derwinski*, 1 Vet.App. 324 (1991); *see also Myers v. Derwinski*, 1 Vet.App. 127 (1991).

Section 3.321(b) provides that a claimant may be entitled to an extra-schedular evaluation if there is "[a] finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b). It was established in *Floyd v. Brown*, 9 Vet.App. 88, 94–96 (1996), that the BVA cannot consider an extra-schedular rating in the first instance; rather, the Court held that "the proper procedure for extra-schedular consideration of a claim under 38 C.F.R. § 3.321(b)(1) requires consideration in the first instance by the Under Secretary for Benefits (formerly the Chief Benefits Director) or the Director of the Compensation and Pension Service." *Id.* at 95. However, the Court in *Floyd* did not limit the BVA's duty to consider whether an extra-schedular rating should be addressed by the appropriate official. As the Court stated, "[T]he Board is in fact obligated to consider the applicability of the extra-schedular rating regulation, but must then refer the matter for decision in the first instance by the appropriate VA officials." *Id.* at 96. Accordingly, a remand is required so that the BVA may consider whether the appellant's claim for an increased rating of his service-connected osteomyelitis should be referred to the appropriate VA official to determine whether an extra-schedular rating under section 3.321(b) would be appropriate.

■ With regard to the appellant's sternoclavicular separation claim, there is no specific DC which applies to this disability; therefore, the RO is required to rate the appellant's disability under a similar DC. *See* 38 C.F.R. § 4.20 (1994) ("When an unlisted condition is encountered it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous"). The determination of whether the proper DC in a particular case was selected involves an application of law to facts and is set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc). Here, the BVA concluded that because the appellant's disability involves a "limitation of motion of the right arm," DC 5201, which governs limitation of arm motion, was the proper DC under which the appellant's disability should be rated. *See* 38 C.F.R. § 4.71(a) DC 5201. The selection of this DC was not arbitrary and capricious because it governs a disability that is "closely analogous" to the appellant's disability. *See* 38 C.F.R. § 4.20.

■ The appellant's right sternoclavicular separation is currently rated as 20% disabling, and in order for him to achieve a higher rating there must be a determination that there is a "limitation of motion of ... [the arm to] midway between the side and shoulder level." *See* 38 C.F.R. § 4.71(a) DC 5201 (1994). Although in February 1989, the appellant's doctor found the shoulder to be "essentially frozen" with no abduction and very limited external rotation, a February 1991 and August 1991 VA examination found abduction to be between 80 and 90 degrees. *See* R. at 836 *and compare* R. at 983, 996. Based on this evidence alone, it appears that the appellant was not entitled to a disability rating greater than his present rating for his right sternoclavicular separation. Nevertheless, the appellant has made several complaints of pain in association with the use of his shoulder. Both VA regulations and this Court's precedent explicitly state that pain may provide a basis for a disability rating. *See, e.g., Magana v. Brown*, 7 Vet.App. 224, 228 (1994) (recognizing that "VA regulations and [this Court's] caselaw are very clear that pain may provide a basis for a compensable rating"). Relevant VA regulations describe pain as a factor that must be considered

when making a disability rating decision involving the musculoskeletal system. *See* 38 C.F.R. §§ 4.40, 4.45(f) and 4.59 (1994). Section 4.40 provides in pertinent part that "[i]t is essential that the examination on which ratings are based adequately portray the ... functional loss ..., [and] the functional loss ... may be due to pain." 38 C.F.R. § 4.40. In addition, section 4.45(f) states that "pain on movement" is a relevant consideration for determinations of joint disabilities. 38 C.F.R. § 4.45(f). Finally, section 4.59 provides that "[w]ith any form of arthritis, painful motion is an important factor of disability, [and] the facial expressions, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints." 38 C.F.R. § 4.59.

█ The BVA has a well-established statutory duty to provide a written statement of its "findings and conclusions" setting forth sufficient "reasons or bases" for its decision. *See* 38 U.S.C. § 7104(d)(1). This Court has strictly construed this statutory duty, and has articulated it in the following manner:

> The Board must identify those findings it deems crucial to its decisions and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor "clear enough to permit effective judicial review", nor in compliance with statutory requirements.

*Gilbert*, 1 Vet.App. at 57; *see also Peters v. Brown*, 6 Vet.App. 540, 542 (1994). Accordingly, if the BVA fails to provide an adequate statement of its "reasons or bases" the case must be remanded for further adjudication. *Gilbert*, 1 Vet.App. at 57.

Here, the BVA has not explained, with respect to the appellant's complaints and reports of pain, the reasons or bases for denying the claim for an increased disability rating. *See* 38 U.S.C. § 7104(d)(1). Although the BVA did briefly mention that it took the appellant's complaints of pain into consideration, it did not clearly indicate or describe what role the appellant's assertions of pain played in its decision. R. at 45. Moreover,

the DC under which the appellant's shoulder disability was rated, DC 5201, makes no reference to pain; yet without discussing the applicability of 38 C.F.R. §§ 4.40, 4.45(f) and 4.59 (1994), the BVA stated that it "considered the [appellant's] complaints of pain" in assigning a 20% rating. *See Hatlestad v. Brown*, 5 Vet.App. 524, 532 (1993).

Where, as in the instant case, the BVA has failed to provide adequate reasons or bases with respect to considerations of the veteran's assertions of pain, this Court has consistently remanded the case. *See Voyles v. Brown*, 5 Vet.App. 451, 453 (1993) (remanding because "it was necessary for the BVA to address both the existence and extent of appellant's pain, as well as any limitation of motion due to his service connected disabilities"); *Fanning v. Brown*, 4 Vet.App. 225, 231 (1993) (remanding for a "consideration of appellant's employability in light of the pain he suffers"); *Quarles v. Derwinski*, 3 Vet. App. 129 (1992) (remanding because the BVA failed to analyze the effect of the veteran's back pain on his disability). At the very minimum, the BVA must "consider or discuss how regulations 4.40, 4.45(f), [and 4.59] apply [or do not apply] to the facts presented in this case." *Voyles*, 5 Vet.App. at 453.

### C. TDIU

The appellant filed a separate claim for TDIU after 1987. This claim was denied by the RO, and the appellant properly filed a NOD as to that claim. The BVA failed to address this issue. For the reasons already discussed, we reject the Secretary's contention that the TDIU claim was subsumed into the reconsideration decision. Therefore, the BVA's failure to review the adjudication of the TDIU claim was error and this claim is remanded to the BVA for adjudication. *EF*, 1 Vet.App. at 326, citing *Littke v. Derwinski*, 1 Vet.App. 90, 92 (1990).

### D. CUE

█ Finally, on appeal to the BVA, the appellant raised for the first time the issue of CUE in a January 1953 RO decision. R. at 1053. The BVA referred the CUE claim to the RO for adjudication. The Court con-

cludes that the BVA did not err in referring this claim to the RO. *See Godfrey v. Brown,* 7 Vet.App. 398 (1995); cf. *Kellar v. Brown,* 6 Vet.App. 157, 160 (1994); *Bernard v. Brown,* 4 Vet.App. 384, 393–94 (1993). Therefore, this claim is presently not ripe for the Court's review.

## III.  CONCLUSION

Accordingly, the Court DISMISSES for lack of jurisdiction the appeal with respect to the claim for residuals of injury to Muscle Groups I through IV, and the claim for a cervical spine disability. The Court VACATES the remaining March 28, 1994, BVA decisions with the exception of the Board's action on the CUE claim, and REMANDS these matters for further proceedings.

## ORDER ON MOTION FOR CLARIFICATION

PER CURIAM.

This matter is before the Court on the Secretary's motion for clarification of the February 3, 1997, decision in this case, *Smallwood v. Brown,* 10 Vet.App. 93 (1997). The Secretary also moves for a stay of the issuance of the above mandate pending a ruling on this motion. The Secretary correctly points out that the Court failed to adjudicate the issue of the appellant's claim for an increased rating for his service-connected gunshot wound to his chest.

The appellant's service-connected gunshot wound to the chest is rated at 40% disabling. In affirming the rating decision, the BVA discussed the history of this injury, up to and including an August 1991 VA examination. The Board found that the evidence presented did not warrant a rating higher than 40%, or moderately severe, as outlined in 38 C.F.R. § 4.97, Diagnostic Code 6818. Since the record concerning the appellant's lung injury provides a plausible basis for the rating decision, the finding of the Board is not clearly erroneous and this Court will not disturb that decision. *See* 38 U.S.C. § 7261(a)(4); *Solomon v. Brown,* 6 Vet.App. 396 (1994); *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990).

Accordingly, the Secretary's motion for clarification is granted. The February 3, 1997, decision in this case is amended to reflect that the 1994 decision of the Board denying an increased rating for the appellant's service-connected gunshot wound of the chest is AFFIRMED. The judgment having not yet issued, it is further

ORDERED that the Secretary's motion to stay the issuance of the mandate is DENIED. It is further

ORDERED that judgment in this case will issue 21 days after the date of this order.