Citation Nr: 1532760 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 04-00 270 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to a rating in excess of 20 percent between November 18, 2005 and November 13, 2008 for service-connected degenerative disc disease of the lumbar spine (back disability).

2. Entitlement to service connection for radiculopathy associated with service-connected degenerative disc disease of the lumbar spine between November 18, 2005 and November 13, 2008.

3. Entitlement to an initial rating in excess of 10 percent for service-connected radiculopathy of the left lower extremity.

4. Entitlement to an initial rating in excess of 10 percent for service-connected radiculopathy of the right lower extremity.

5. Entitlement to service connection for erectile dysfunction and urinary frequency.

6. Entitlement to service connection for irritation of the stomach with acid reflux and constipation.

7. Entitlement to a total disability evaluation based on individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: John S. Berry, Esq.


ATTORNEY FOR THE BOARD

E. D. Anderson, Counsel


INTRODUCTION

The Veteran had active service from September 1974 to September 1978.

This appeal comes to the Board of Veterans' Appeals (Board) from multiple rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO).

Some of the issues on appeal have been previously before the Board on several occasions. In relevant part, in a January 2012 decision the Board denied the Veteran's appeal for an increased rating for his service-connected back disability. The Veteran timely appealed this decision to the Court of Appeals for Veterans Claims (Court). In a November 2012 Joint Motion for Remand (JMR) the Court vacated this issue and remanded it to the Board for further processing. Specifically, the Court stated the prior criteria for ratings for back disabilities, amended in 2002, should be applied to the Veteran's appeal.

In May 2013, the Board again partially denied the Veteran's claim for an increased rating for his back disability, and remanded entitlement to service connection for a cervical spine disability for further development. The Veteran again timely appealed this decision to the Court. In a July 2014 Memorandum Decision, the Court vacated only the portion of the Board's decision regarding the 20 percent rating assigned for the Veteran's service-connected back disability between November 2005 and November 2008, and remanded this issue to the Board for further processing. Specifically, the Court stated the Board should address compliance with the JMR directives, particular addressing whether a June 2006 MRI finding facet arthritis could have led to a higher rating under the old regulations. The Court also found the Board should address the June 2006 VA examiner's finding that the Veteran's back disability rendered him unemployable, as well as a notation of dullness in the lower extremities during the June 2008 VA examination. Accordingly, the issue of entitlement to a rating in excess of 20 percent between November 18, 2005 and November 13, 2008 for service-connected back disability has returned to the Board. 

The AOJ has not yet taken the development requested in the remand of entitlement to service connection for a cervical spine disorder included in the prior May 2013 Board decision. Accordingly, this issue is not currently before the Board, but the AOJ should ensure the requested development is completed.

The issues of entitlement to an initial rating in excess of 10 percent for service-connected radiculopathy of the left and right legs, and entitlement to service connection for erectile dysfunction and irritation of the stomach are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran consistently demonstrated pain-free forward flexion in excess of 40 degrees and bilateral rotation of his back throughout the period on appeal. He did not demonstrate ankylosis or attacks of IVDS at any point.

2. The Veteran demonstrated symptoms of radiculopathy during the period from November 18, 2005 to November 13, 2008.

3. On April 14, 2015, prior to the promulgation of a decision in the appeal, the Board received notification from the appellant, through his representative, that a withdrawal of his claim for TDIU is requested.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 20 percent for service-connected degenerative disk disease of the lumbar spine between November 18, 2005 and November 13, 2008 have not been met. 38 U.S.C.A. §§ 1155; 5107(b) (West 2014); 38 C.F.R. §§ 4.7, 4.14, 4.71a, DC 5266-5295 (2002), DC 5237, 5243 (2014). 

2. Entitlement to service connection for radiculopathy of the bilateral lower extremities associated with service-connected degenerative disc disease of the lumbar spine is granted effective November 18, 2005. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303 (2014). 

3. The criteria for withdrawal of the issue of TDIU by the appellant have been met. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has reviewed all of the evidence in the claims folder. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the Federal Circuit has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to these claims. 

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Increased Rating for Back Disability

The Veteran is seeking an increased rating for his service-connected back disability. Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

The Board notes that while the regulations require review of the recorded history of a disability by the adjudicator to ensure an accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings. Where an increase in the disability rating is at issue, the present level of the veteran's disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). It is also noted that staged ratings are appropriate for an increased rating claim whenever the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

During the pendency of this appeal, the criteria for rating spinal disabilities were revised, effective September 2003. When the rating criteria are amended during the course of the appeal, the Board considers both the prior rating criteria and the current rating criteria in order to ensure the greatest benefit to the Veteran. However, the Board may not award a rating based on the revised criteria prior to the effective date of the change. VAOPCCPREC 3-2000. 

Under both the new and old rating criteria, VA regulations have provided that normal range of motion of the thoracolumbar spine is flexion to 90 degrees, extension to 30 degrees, lateral flexion to 30 degrees in both directions, and rotation to 30 degrees in both directions. 38 C.F.R. § 4.71a, Plate V. 

During the period in question, the Veteran's back disability has been rated 20 percent for limitation of forward flexion under Diagnostic Code (DC) 5237, formerly DC 5293.

Previous Rating Criteria

Under the previous DC 5292, a 10 percent rating was warranted for slight limitation of motion of the lumbar spine, a 20 percent rating was warranted for moderate limitation of motion, and a 40 percent rating was warranted for severe limitation of motion. 38 C.F.R. § 4.71a, DC 5295 (2014). The words 'slight,' 'moderate,' and 'severe' are not defined in the rating schedule, instead the VA must consider all evidence of record to make this determination. 38 U.S.C.A. § 7104(a).

Additionally, ratings may also be assigned for lumbosacral strain. A 20 percent rating was assigned for muscle spasm on extreme forward bending, or loss of internal spine motion. A maximum 40 percent rating was warranted for severe lumbarsacral strain with listing of whole spine to the opposite side, positive Goldwaite's sign, marked limitation of forward bending in the standing position, loss of lateral motion with osteo-arthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion. 38 C.F.R. § 4.71a, DC 5295 (2014).

Finally, ratings for intervertebral disc syndrome were rated under prior DC 5293. Under this code, a 20 percent rating was warranted for moderate recurring attacks. A higher 40 percent rating was warranted for severe symptoms with recurring attacks and intermittent relief.

Current Rating Criteria

New rating criteria for back disabilities became effective on September 23, 2003. Under the new regulations, intervertebral disc syndrome is rated under DC 5293. A 20 percent rating is assigned for incapacitating episodes having a total duration of at least 2 weeks but less than 3 weeks during the past 12 months. A higher 40 percent rating is assigned for such episodes lasting between 4 and 6 weeks.

Otherwise, the General Rating Formula for Disease and Injuries of the Spine provides a 20 percent rating is assigned for: 

• Forward flexion of the thoracolumbar spine between 30 and 60 degrees
• Combined range of motion of the thoracolumbar spine not greater than 120 degrees, or
• Muscle spasm or guarding severe enough to result in an abnormal gait or spinal contour

A higher 40 percent rating is warranted for:

• Forward flexion of the thoracolumbar spine limited to 30 degrees or less, or
• Favorable ankylosis of the entire thoracolumbar spine

As will be discussed below, the evidence does not establish the Veteran met the criteria for a rating in excess of 20 percent for his service-connected back disability during the period on appeal under either the old or new rating criteria.

Analysis

First, the Veteran consistently demonstrated range of motion that was less than severe, with flexion in excess of 30 degrees, throughout the period on appeal. For example, during physical therapy in November 2005, he demonstrated flexion to 40 degrees, extension to 10 degrees, and bilateral gliding to 10 degrees. During his June 2006 VA examination, he demonstrated flexion to 45 degrees, and lateral flexion and rotation to 15 degrees bilaterally. The Board does note the Veteran was not able to extend his back at that time due to his pain. 

Even considering the Veteran's limitation of motion due to pain, see DeLuca v, Brown, 8 Vet. App. 202, 206-07 (1995), the Veteran still demonstrated pain-free flexion to 40 or 45 degrees, in excess of the criteria for a higher rating under the current rating criteria. Additionally, because the Veteran was able to forward flex his back to nearly half the normal range, the Board finds his limitation of motion cannot be characterized as "severe" under the prior regulations. Finally, the evidence does not reflect the Veteran experienced ankylosis of the back at any point during this period. Therefore, the criteria for a rating in excess of 20 percent based on limitation of motion under the new or previous rating criteria have not been met.

The evidence also does not reflect the Veteran experienced recurring attacks of intervertebral disc syndrome (IVDS), or was prescribed any bed rest due to a period of active signs and symptoms at any point during the period on appeal. Accordingly, a rating based on IVDS under the current DC 5234 or prior DC 5293 is not warranted. 

The Board has also considered whether higher ratings could be warranted under the additional previous diagnostic codes. The Board has specifically considered a higher rating under the previous DC 5295, as directed by the Court in the July 2014 Memorandum Decision. 

The report from the June 2006 VA examiner reflects an MRI revealed facet arthrosis, or osteo-arthritic changes. Additionally, the Veteran experienced limitation of motion due to his pain, including limited forward flexion and side rotation. However, even considering these facts, the Board finds a higher rating is not warranted.

The previous DC 5295 provides a 40 percent rating will be warranted for, in relevant part, severe lumbosacral strain resulting in marked limitation of forward bending from a standing position or loss of lateral motion with osteo-arthritic changes. In this case, the Veteran continued to demonstrate forward flexion to 40 or 45 degrees, nearly half the normal range of motion. Therefore, the Board determines his retained ability to bend forward in nearly half the normal range does not constitute "marked" limitation. Additionally, although the MRI reflects the Veteran had osteo-arthritic changes, he still retained the ability to rotate and flex to 15 degrees in both directions, again half the normal range of motion. Because he retained half the normal range of lateral motion, he did not demonstrate loss of lateral motion. Therefore, he did not meet the criteria for a higher 40 percent rating under the previous DC 5295. 

Based on the foregoing, the evidence does not establish the Veteran met the criteria associated with a rating in excess of 20 percent for his service-connected back disability under either the current or previous back regulations between November 18, 2005 and November 13, 2008. Accordingly, his appeal for an increased rating is denied. The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2014).

Separate Rating for Radiculopathy

VA regulations also provide that any objective neurologic abnormalities associated with a service-connected back disability should be separately rated. In this case, the Veteran reported symptoms of dullness or numbness in both legs during his June 2008 VA examination. Based on these reported symptoms, the examiner diagnosed the Veteran with peripheral neuropathy in both legs. However, the Veteran was subsequently granted service connection for radiculopathy effective July 2012, apparently because it was the date of a separate claim the Veteran filed for radiculopathy. Tthe Veteran has argued that he should be entitled to an earlier effective date for the grant of entitlement to service connection for radiculopathy of the left and right lower extremities because this disability is secondary to his service connected low back disability and should be considered part of his claim for a higher disability evaluation for his back disability. The Veteran has requested an effective date of November 18, 2005.

The Veteran has a long history of reporting symptoms of radiating pain and numbness in the lower extremities. 

On November 18, 2005, a physical therapist evaluated the Veteran for low back pain with numbness, weakness, and tingling in the lower extremities without bladder dysfunction or gait disturbance. 

Flexion was to 40 degrees, extension was to 10 degrees, and right and left side gliding was to 10 degrees. The straight leg raising test was positive. Sensation to light touch was normal. The tendon reflexes were equal. Motor strength was 4 of 5 in the muscles of the thigh. 

VA records show that in February 2006 the Veteran complained of back pain extending to the hips. 

On VA examination in June 2006, the Veteran complained of daily flare-ups with stiffness, weakness and decreased mobility and pain in the lower back with numbness and tingling in the toes. He denied bowel or bladder dysfunction. 

Physical examination revealed that the Veteran walked with an antalgic gait with slow progression without any assistive devices. The Veteran's posture was erect. He had stiffness and spasms across the lower back. Flexion was to 45 degrees. The Veteran did not attempt extension as he indicated it was too much strain on his back. Right and left lateral flexion and right and left lateral rotation were from to 15 degrees. He had limited motion due to pain. 

The neurological evaluation showed no evidence of muscle atrophy. There was no difference in the circumference at mid-thigh and at mid-calf. On sensory examination, the Veteran stated that he could not feel light touch on the lateral aspect and the medial aspect of the lower legs. The deep tendon reflexes were 2+ bilaterally. The Babinski sign was negative. The Romberg test was negative. The Lasegue sign was positive at 5 degrees bilaterally. The VA examiner stated that is hard to estimate the limitation of motion, because of the Veteran's lack of effort. After a review of X-rays and a MRI, the diagnosis was acute lumbosacral strain without radiculopathy. 

In June 2008 on a VA neurological examination, the Veteran complained of pain and numbness in the lower legs and numbness and pain on the front and back of his thighs and calves. On motor examination, the mid-calves and thighs were equal and symmetrical. Sensory examination showed dullness on the front and the back of the thighs. He had dullness on the calves. The knee reflexes were 3+ and the ankle reflexes were 3+. The Romberg test was negative and the Lasegue sign was not elicited. 

After a review of X-rays and MRIs of the lumbar spine, the VA examiner found no evidence of the right or left lower extremity radiculopathy and no evidence of active denervation phenomenon based on the needle EMG examination, which was essentially normal. The diagnosis was subjective peripheral neuropathy of the lower extremities, not supported by EMG and MRI. 

At another VA examination in November 2008, the Veteran again complained of radiating back pain. 

Although the Veteran was not diagnosed with radiculopathy during the period on appeal, he did credibly report symptoms consistent with his later diagnosis of radiculopathy of the bilateral lower extremities, secondary to his service connected low back disability. Interpreting the above evidence in a manner most favorable to the Veteran and resolving any doubt in his favor, the Board finds that the Veteran has experienced symptoms of radiculopathy in the bilateral lower extremities since November 18, 2005 and service connection for this disability is accordingly granted from that date. 

Extraschedular Evaluations

Finally, in reaching the above determinations, the Board has also considered whether referral for consideration of an extraschedular rating is warranted, noting that if an exceptional case arises where ratings based on the statutory schedules are found to be inadequate, consideration of an "extra-schedular" evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities will be made. 38 C.F.R. § 3.321(b)(1). The Court has held that the determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b) is a three-step inquiry. Thun v. Peake, 22 Vet. App. 111 (2008). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. If the criteria reasonably describe the veteran's disability level and symptomatology, then the veteran's disability picture is contemplated by the rating schedule and no referral is required. If the criteria do not reasonably describe the veteran's disability level and symptomatology, a determination must be made whether the veteran's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). See id. 

However, in this case, the medical evidence fails to show anything unique or unusual about the Veteran's back disability that would render the schedular criteria inadequate. The Veteran's main symptoms were complaints of pain and limitation of motion. These symptoms were specifically contemplated in the schedular ratings that were assigned. The Veteran's additional complaints of dullness and numbness in his legs were also specifically addressed in the separate grant of an earlier effective date for service connection for radiculopathy of the right and left lower extremities. In this regard, and consistent with the reasoning presented above, the Board finds that the rating schedule is adequate, even in regard to the collective and combined effect of all of the Veteran's service connected disabilities, and that referral for extraschedular consideration is not warranted. Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. Aug. 6, 2014). 

Withdrawal of TDIU Claim

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105 (West 2014). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2014). Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204. In the present case, the appellant has withdrawn the issue of entitlement to TDIU and there remains no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review this issue, and it is dismissed.

The Duty to Notify and Assist

Under the Veterans Claims Assistance Act (VCAA), when VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 C.F.R. § 3.159 (2014). Here, the Veteran was provided with the relevant notice and information prior to the initial adjudication of his claim. Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II). He has not alleged any notice deficiency during the adjudication of his claim. Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

VA also has a duty to assist the Veteran in obtaining potentially relevant records, and providing an examination or medical opinion when necessary to make a decision on the claim. Here, the Veteran's service records, VA records, and identified private treatment records have been obtained and associated with the claims file. The Veteran was also provided with VA examinations which, collectively, contain a description of the history of the disability at issue; document and consider the relevant medical facts and principles; and provide opinions regarding the etiology of the Veteran's claimed condition. VA's duty to assist with respect to obtaining relevant records and an examination has been met. 38 C.F.R. § 3.159(c); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

As discussed, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.


ORDER

A rating in excess of 20 percent for service-connected degenerative disc disease of the lumbar spine between November 18, 2005 and November 13, 2008 is denied.

Entitlement to service connection for radiculopathy of the bilateral lower extremities is granted effective November 18, 2005, subject to the laws and regulations governing the award of monetary benefits.

The Veteran's claim for TDIU is dismissed. 


REMAND

In a July 2013 rating decision, the RO granted service connection for radiculopathy in each leg and assigned 10 percent ratings, and denied entitlement to service connection for erectile dysfunction and irritation of the stomach. In October 2013, the Veteran filed a timely notice of disagreement (NOD) regarding these issues. Based on review of the Veteran's file in the VBMS system, it appears no statement of the case addressing these matters has been issued, and the Veteran's notice of disagreement is still pending. Accordingly, remand is required for a statement of the case regarding these issues. Manlincon v. West, 12 Vet. App. 238, 240-41 (1999). These issues will be returned to the Board after issuance of the SOC only if perfected by the filing of a timely substantive appeal. See Smallwood v. Brown, 10 Vet. App. 93, 97 (1997).

Accordingly, the case is REMANDED for the following action:

Provide the Veteran with a statement of the case addressing his claims for an initial rating in excess of 10 percent for service-connected radiculopathy of the left lower extremity, his claim an initial rating in excess of 10 percent for service-connected radiculopathy of the right lower extremity, his claim for service connection for erectile dysfunction with urinary frequency, and his claim for service connection for irritation of the stomach with acid reflux and constipation. The RO should also advise the Veteran that he must file a substantive appeal within 60 days. If a timely substantive appeal is not filed, these claims should not be certified to the Board. If appealed, subject to current appellate procedures, the case should be returned to the Board for further appellate consideration, if appropriate.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 






action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
KELLI A. KORDICH
Acting Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs