Citation Nr: 1536793 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 06-34 758 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to a total disability evaluation based on individual unemployability as a result of service connected disabilities (TDIU).

2. Entitlement to a disability rating for hypertension in excess of 10 percent.

3. Entitlement to service connection for eczema.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

T. Berryman, Associate Counsel


INTRODUCTION

The Veteran had active military service from May 1984 to August 1984 and October 1998 to April 2003.

This case comes before the Board of Veterans' Appeals (Board) on appeal from an April 2006 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

In November 2007, the Veteran testified during a videoconference hearing before a Decision Review Officer (DRO); a transcript of that hearing is of record.

The issues of entitlement to service connection for posttraumatic stress disorder (PTSD), allergic rhinitis, bilateral carpal tunnel syndrome, lower back condition, bilateral eye condition, high blood pressure, bilateral plantar fasciitis, bilateral lower extremity condition, right eyelid cyst, headaches, sleep condition, tinnitus, irritable bowel syndrome, bilateral knee condition, and tooth condition have been raised by the record in a May 2015 statement from the Veteran and an August 2015 Application for Disability Compensation and Related Compensation Benefits, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over these issues, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015). 

The issue of service connection for eczema and the issue of an increased disability evaluation for hypertension are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The evidence fails to establish that the Veteran's service connected disabilities preclude him from securing and/or following substantially gainful employment.


CONCLUSION OF LAW

The criteria for TDIU are not met. 38 U.S.C.A. §§ 1155, 5103, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 3.340, 3.341, 4.16 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Assist and Notify

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was met, and neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of his claim at this time is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Private treatment records, VA treatment records, and Social Security Administration (SSA) records have all been obtained. Additionally, while the Veteran testified at a DRO hearing, he was also offered the opportunity to testify at a hearing before the Board, but he declined.

VA has also assisted the Veteran by arranging examinations that have yielded findings responsive to his TDIU claim. When VA undertakes to provide a VA examination, it must ensure that the examination is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the examinations obtained are adequate, are predicated on a full understanding of the Veteran's medical history, and provide a sufficient evidentiary basis for the claim to be adjudicated. 

As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

TDIU Claim

Disability evaluations are determined by comparing the veteran's present symptomatology with the criteria set forth in the VA's Schedule for Ratings Disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. § Part 4.

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340. Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service connected disabilities, provided that, if there is only one such disability, the disability shall be ratable at 60 percent or more, and that, if there are two or more service connected disabilities, at least one must be rated at 40 percent or more and the combined rating must be 70 percent or more. 38 C.F.R. § 4.16(a).

If, however, the Veteran does not meet these required percentage standards set forth in 38 C.F.R. § 4.16(a), he still may receive a TDIU on an extraschedular basis if it is determined that he is unable to secure or follow a substantially gainful occupation by reason of his service connected disabilities. 38 C.F.R. § 4.16(b); See also Fanning v. Brown, 4 Vet. App. 225 (1993). Thus, there must be a determination as to whether there are circumstances in this case, apart from any non-service connected conditions and advancing age, which would justify a total rating based on unemployability. See Hodges v. Brown, 5 Vet. App. 375 (1993); Blackburn v. Brown, 4 Vet. App. 395 (1993). 

Being unable to maintain substantially gainful employment is not the same as being 100 percent disabled. "While the term 'substantially gainful occupation' may not set a clear numerical standard for determining TDIU, it does indicate an amount less than 100 percent." Roberson v. Principi, 251 F.3d 1378 (Fed Cir. 2001).

Assignment of a TDIU evaluation requires that the record reflect some factor that "takes the claimant's case outside the norm" of any other veteran rated at the same level. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993) (citing 38 C.F.R. §§ 4.1, 4.15). The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A disability rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Id.

The Veteran's service connected disabilities are: a right wrist disability, evaluated at 50 percent disabling effective September 15, 2004, and 30 percent disabling effective April 1, 2008; allergic rhinitis, evaluated at 10 percent disabling effective October 13, 2006, and 30 percent disabling effective March 20, 2013; a back disability, evaluated at 10 percent disabling effective April 13, 2005, and 20 percent disabling effective November 15, 2007; a bilateral eye disability, evaluated at 20 percent disabling effective March 28, 2013; a right foot disability, evaluated at 10 percent disabling effective April 3, 2003; a left foot disability, evaluated at 10 percent disabling effective April 3, 2003; hypertension, evaluated at 10 percent disabling effective May 20, 2003; a right lower extremity disability, evaluated at 10 percent disabling effective April 1, 2013; and a left lower extremity disability, evaluated at 10 percent disabling effective April 1, 2013. While the Veteran had a single disability rated at 40 percent or more with a combined disability rating of 70 percent or more prior to April 1, 2008 (a right wrist disability rated at 50 percent disabling with a combined disability rating of 70 percent prior to November 15, 2007, and 80 percent from November 15, 2007 to April 1, 2008), as of April 1, 2008, the Veteran's right wrist disability was reduced to 30 percent disabling, and therefore, he no longer met the schedular requirements for TDIU. 38 C.F.R. §§ 4.16(a), 4.25.

As the Veteran does not meet the applicable percentage standards as of April 1, 2008, the Board must consider whether the Veteran is nevertheless unable to secure or follow a substantially gainful occupation as a result of his service connected disabilities. See 38 C.F.R. § 4.16(b).

After a review of the competent evidence of record, the Board finds that the Veteran was not unable to secure or follow a substantially gainful occupation prior to April 1, 2008, and therefore, a schedular award of TDIU is not warranted. In addition, at no time is referral of the TDIU issue for extra-schedular consideration warranted.

As an initial point, the Veteran has a high school degree as well as several years of college and training at Western Tech Institution and Electronic tech.

At the November 2007 DRO hearing, the Veteran asserted that he was unable to work due to his feet, back, and wrist, and that his medications caused drowsiness.

A review of the Veteran's SSA records show that he was found to not have the capacity to meet the basic mental demands of competitive employment, for which SSA disability benefits were awarded. However, the Veteran is not service connected for any mental disabilities, and therefore, this evidence need not be discussed further. Of note, the SSA records do not suggest that the Veteran's service connected disabilities contributed to the award of SSA disability benefits.

In January 2006, the Veteran was afforded a SSA consultative examination. After conducting a physical examination, the physician noted that although the Veteran could not perform "strenuous" activities due to pain, the Veteran would be able to perform his usual activities of daily living.

In November 2007, after conducting a physical examination, a private physician opined that the Veteran was very smart and intelligent and could be retained and utilized in the workforce.

In April 2008, a VA physician opined that the Veteran would not be able to work at any type of employment due to his chronic medical conditions in addition to his mental condition. While this opinion is informative, it is not the role of a physician to find the Veteran is unemployable. Instead, it is the province of VA to determine employability, whereas it is the medical professional's role to describe functional limitation. In addition, the physician did not adequately explain the effects, if any, of the Veteran's service connected disabilities on his ability to work and instead reported that the Veteran's mental conditions played a part in his inability to sustain employment. Therefore, this opinion is not found on its face to mandate TDIU as it does not show that the Veteran cannot work on account of his service connected disabilities.

The Veteran has been afforded multiple VA examinations regarding his disabilities. The January 2005 VA examiner noted that the Veteran had mild to moderate functional impairment of his right wrist but he was still able to work at a computer.

The August 2005 VA examiner noted that the Veteran had not experienced any incapacitating episodes and was able to perform his activities of daily living, although at a slower pace. Another VA examiner noted that the Veteran's eye disability had no significant occupational effects on his daily activities.

The January 2006 VA examiner noted that the Veteran had not experienced any incapacitating episodes. In addition, the Veteran reported that his disabilities had no effect on his activities of daily living. The examiner opined that the Veteran was able to secure and maintain employment, but his right hand resulted in limitations performing lifting and repetitive movements.

The January 2007 VA examiner noted that the Veteran's eye disability did not result in any incapacitating episodes and had no significant occupational effects on his daily activities.

The August 2008 VA examiner noted that the Veteran had already been seen a few times for his back and right wrist, and each time the Veteran's range of motion varied greatly. The examiner further noted that the Veteran's alleged symptoms were disproportionate to the clinical examination and studies. The examiner reviewed the April 2008 VA physician letter regarding the Veteran's inability to work, but reported that it would be speculative to opine on any functional limitations due to the inconsistent examination findings.

The March 2013 VA examiner reviewed the Veteran's claims file, interviewed the Veteran, and conducted a physical examination. The examiner noted that the Veteran had a normal EMG of the right wrist, which did not support service connection. The examiner noted that the Veteran's symptoms from his back disability were inconsistent with normal objective findings, which did not support service connection. The examiner noted that the Veteran did not have any evidence of a bilateral foot disability as findings were normal and his alleged symptoms were inconsistent with normal objective findings, which did not support service connection. The examiner noted that the Veteran's "self-serving over-exaggeration" of symptoms in the face of normal objective evidence dating back to his military service records was obvious evidence that the Veteran suffers from a psychosomatic disorder with possible malingering or exaggeration of symptoms for secondary gain. The examiner noted that none of the Veteran's physical conditions were believed to be legitimate, none appeared to be service connected, and none contributed to his inability to seek, find, and maintain some form of gainful employment.

The November 2013 VA examiner noted that the Veteran's back disability impacted his ability to work and resulted in no lifting, walking 10 minutes at a time and 10 minutes per hour, sitting with breaks every 30 minutes, and standing 20 minutes at a time and 20 minutes per hour. 

The August 2014 VA examiner noted that the Veteran's hypertension caused the Veteran dizziness, headaches, and irritability. The examiner noted that the Veteran's foot disabilities resulted in periodic pain especially from prolonged standing and walking. The examiner noted that the Veteran's back disability resulted in constant back pain especially from prolonged standing and walking. The examiner noted that the Veteran's bilateral leg disabilities resulted in periodic pain especially when climbing stairs, carrying weights, and with prolonged standing and walking. The examiner noted that the Veteran's allergic rhinitis resulted in watery and itchy eyes with medications providing temporary relief. The examiner concluded that the Veteran's service connected disabilities would have a mild effect on sedentary employment.

The May 2015 VA examiner noted that the Veteran's back disability caused a mild impact on his ability to work in a physical job that required lifting, pushing, or pulling heavy objects or standing for longs periods of time. The examiner also noted that the Veteran's back disability and right wrist disability caused a mild impact on his ability to work a sedentary job that required sitting for prolonged periods. The examiner noted that the Veteran's right and left leg disabilities caused no impact on his ability to work a sedentary job that required sitting at a desk, working at a computer, or answering telephones. The examiner concluded that the Veteran's service connected disabilities caused a mild to moderate impact on his ability to seek, secure, and maintain substantially gainful physical employment that required lifting, pushing, or pulling over 20 pounds or walking or standing for prolonged periods of time. The examiner further concluded that the Veteran's service connected disabilities caused a minimal impact on his ability to seek, secure, and maintain substantially gainful sedentary employment that did not require typing for more than three hours per day. The examiner also noted that the Veteran's pain medications did not result in a major impairment on his ability to seek, secure, and maintain substantially gainful physical or sedentary employment.

Here, multiple VA examiners opined that the Veteran was, at most, limited to a reduced range of sedentary work. A SSA physician opined that the Veteran could not perform strenuous activities. A private physician opined that the Veteran could be utilized in the workforce. All of these opinions are entitled to great weight as they are consistent with the medical evidence of record. However, the greatest weight is given to the opinions of the VA examiners as their opinions directly considered the effects of the Veteran's service connected disabilities on his ability to sustain substantially gainful employment.

The Board acknowledges that the Veteran is competent to report symptoms of his service connected disabilities. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Layno v. Brown, 6 Vet. App. 465 (1994). He is not however competent to identify a specific level of disability according to the appropriate diagnostic code or to assess whether the symptoms preclude employment. Such competent evidence concerning the nature and extent of the Veteran's service connected disabilities, and in particular his ability to work, has been provided by VA medical professionals who have examined him. The medical findings directly address criteria under which a TDIU is assigned. The Board finds these records to be the only competent and probative evidence of record, and therefore is accorded greater weight than the Veteran's subjective complaints. See Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991). 

The Veteran is considered competent to describe symptoms such as pain and weakness as they are capable of lay observation. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, in adjudicating this claim, the Board must assess not only competency of the Veteran's statements, but also their credibility. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). 
 
Here, the Veteran contends that his service connected disabilities prevent him from working, but the fact remains that the March 2013 VA examiner noted that the Veteran's "self-serving over-exaggeration" of symptoms in the face of normal objective evidence dating back to his military service records was obvious evidence that the Veteran suffers from a psychosomatic disorder with possible malingering or exaggeration of symptoms for secondary gain, and thus, none of the Veteran's physical conditions were believed to be legitimate, none appeared to be service connected, and none contributed to his inability to seek, find, and maintain some form of gainful employment. This opinion negatively affects the Veteran's credibility.
 
While the Board does not wish to minimize the nature and extent of the Veteran's overall disability, the evidence of record does not support his claim that his service connected disabilities alone, or in conjunction with one another, are sufficient to produce unemployability. Although they produce some impairment, the evidence does not reflect gainful employment is precluded solely due to the Veteran's service connected disabilities. 

In addition, the Veteran has not identified or submitted any competent evidence demonstrating that his service connected disabilities, individually or in concert, preclude him from securing and maintaining substantially gainful employment and entitle him to a TDIU.

Accordingly, for all the foregoing reasons, the Veteran's claim for TDIU is denied.


ORDER

TDIU is denied.


REMAND

In a June 2015 rating decision, the RO denied service connection for eczema and an increased disability evaluation for hypertension. The Veteran filed a VA Form Notice of Disagreement in July 2015 regarding the June 2015 rating decision.

This notice of disagreement is still pending, and a remand is required for a statement of the case on this issue. Manlincon v. West, 12 Vet. App. 238, 240-41 (1999). However, this issue will be returned to the Board after issuance of the SOC only if perfected by the filing of a timely substantive appeal. See Smallwood v. Brown, 10 Vet. App. 93, 97 (1997).

Accordingly, the case is REMANDED for the following action:

Adjudicate the issue of service connection for eczema and adjudicate the issue of an increased disability evaluation for hypertension; if the benefits sought cannot be granted, issue a statement of the case in accordance with applicable law and regulations. The Veteran and his representative should be informed of the period of time within which he must file a substantive appeal to perfect his appeal to the Board concerning this issue. If a timely substantive appeal is not filed, the claim should not be certified to the Board. If so, subject to current appellate procedures, the case should be returned to the Board for further appellate consideration, if appropriate. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

____________________________________________
MATTHEW W. BLACKWELDER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs